UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TERRY TRAN,<br><br>          Plaintiff,<br><br>vs.<br><br>SEMLER SCIENTIFIC INC., DOUGLAS MURPHY-CHUTORIAN, ERIC SEMLER, WILLIAM H.C. CHANG, and DANIEL S. MESSINA,<br><br>          Defendants. | Case No. 25-cv-12555 |

**COMPLAINT**

Plaintiff Terry Tran ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

**NATURE OF THE ACTION**

1. This is an action brought by Plaintiff against Semler Scientific, Inc. ("Semler Scientific" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Semler Scientific, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9. Plaintiff's claims arise in connection with the proposed acquisition of Semler Scientific by Strive, Inc. ("Parent") and Parent's newly formed merger subsidiaries (together with Parent, "Strive").

2. On or about September 22, 2025, Semler Scientific entered into an agreement and plan of merger (the "Merger Agreement"), whereby Strive will acquire Semler Scientific (the "Proposed Transaction") and shareholders of Semler Scientific common stock will receive 21.05 shares of Strive Class A Common Stock for each share of Semler Scientific common stock they own (the "Exchange Ratio" or "Merger Consideration").

3. On or about October 10, 2025, in order to convince Semler Scientific's shareholders to support the Proposed Transaction, the Board authorized the filing of a Form S-4 Registration Statement (the "Registration Statement") with the Securities and Exchange Commission ("SEC"). As detailed below, the Registration Statement is materially incomplete and misleading with respect to the financial impacts of the Proposed Transaction on the combined company and the financial fairness of the Proposed Transaction.

4. The special meeting at which Semler Scientific's shareholders will cast their votes on the Proposed Transaction (the "Special Meeting") will be scheduled and the definitive proxy statement that will be used to solicit votes on the Proposed Transaction will be sent to Semler Scientific shareholders shortly. It is imperative that the material information that has been omitted from the Registration Statement be disclosed immediately so public stockholders may have time to consider the information that has been omitted and misrepresented and make a fully and fairly informed determination as to how to vote.

5. For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from consummating the Proposed Transaction, unless and until the material information discussed below is disclosed to Semler Scientific's shareholders, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

6.  This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

7.  Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Vigman*, 764 F.2d at 1316.

8.  Venue is proper in this Court under Section 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b)(2) because Defendants are subject to personal jurisdiction in this District, Strive and Semler Scientific's independent registered public accounting firms maintain offices in this District, Strive's financial advisors maintain offices in this District, and shareholders of Semler Scientific reside in this District so Defendants were aware that the Registration Statement would be reviewed in this District. *See Sarantakis v. Gruttadauria*, No. 02 c 1609, 2003 U.S. Dist. LEXIS 4002, at *23 (N.D. Ill. Mar. 17, 2003) ("Venue is appropriate in a securities case where a defendant causes false or misleading information to be transmitted into a judicial district."); *see also Oxford First Corp. v. PNC Liquidating Corp.*, 372 F. Supp. 191, 197 (E.D. Pa. Mar. 6, 1974)

3

("Venue will be sustained in a securities case where a defendant causes false or misleading information to be transmitted into a judicial district, even if the defendant never has been physically present in that district."); *Mitchell v. Texas Gulf Sulphur Co.*, 446 F.2d 90, 106 (10th Cir. 1971) (finding venue proper in the District of Utah where the defendant released a false and fraudulent press statement that was printed in the Wall Street Journal that was circulated in Salt Lake City, Utah).

## PARTIES

9. Plaintiff is, and has been continuously throughout all times relevant hereto, an owner of Semler Scientific common stock.

10. Defendant Semler Scientific is a publicly traded company that has adopted Bitcoin as its primary treasury reserve asset and is one of the leading corporate holders of Bitcoin, becoming the second publicly traded company in the United States to adopt a Bitcoin treasury strategy in May 2024. Semler Scientific also operates a healthcare business, developing and marketing technology products and services to assist its customers in evaluating and treating chronic diseases, including with Semler Scientific's flagship product, QuantaFlo, a rapid point-of-care test that measures arterial blood flow in the extremities. Semler Scientific's common stock trades on the Nasdaq Stock Market (the "Nasdaq") under the ticker symbol "SMLR."

11. Defendant Douglas Murphy-Chutorian ("Murphy-Chutorian") is Semler Scientific's Chief Executive Officer and a director of the Company.

12. Defendant Eric Semler ("E. Semler") is the Executive Chairman of the Board of Directors of the Company.

13. Defendant William H.C. Chang ("Chang") is a director of the Company.

14. Defendant Daniel S. Messina ("Messina") is a director of the Company.

4

15. The defendants identified in paragraphs 11 through 14 are collectively referred to as the "Individual Defendants" or the "Board."

## SUBSTANTIVE ALLEGATIONS

**A. Background of the Proposed Transaction**

16. Defendant Semler Scientific is a publicly traded company that has adopted Bitcoin as its primary treasury reserve asset and is one of the leading corporate holders of Bitcoin, becoming the second publicly traded company in the United States to adopt a Bitcoin treasury strategy in May 2024. Semler Scientific also operates a healthcare business, developing and marketing technology products and services to assist its customers in evaluating and treating chronic diseases, including with Semler Scientific's flagship product, QuantaFlo, a rapid point-of-care test that measures arterial blood flow in the extremities. Semler Scientific's common stock trades on the Nasdaq under the ticker symbol "SMLR."

17. On September 8, 2025, a publicly traded Bitcoin treasury company identified in the Registration Statement as "Party A" approached Defendant E. Semler about a potential transaction with Semler Scientific.

18. On September 12, 2025, Party A submitted a written proposal to acquire the Company in an all-stock transaction that valued the Company at approximately $41.00 per share.

19. Also on September 12, 2025, the Strive Enterprises, Inc. acquired Asset Entities, Inc. in a reverse merger through which Strive became publicly traded (the "Asset Entities Merger"). In connection with the closing of the Asset Entities Merger, Strive raised gross proceeds of approximately $749.6 million from issuing and selling 345,587,795 shares of Class A Common Stock at $1.35 per share and 209,771,462 Pre-Funded Warrants at $1.3499 per warrant (the "Strive PIPE Investment").

20. The Strive PIPE Investment was made in accordance with a May 26, 2025 Subscription Agreement (the "Strive Subscription Agreement") providing for the issuance of "at-the-market" securities at $1.35 per share at the closing of the Asset Entities Merger, plus the option to purchase additional at-the-market securities at various prices after the closing of the Asset Entities Merger.

21. On September 15, 2025, the Semler Scientific Board formally approved the engagement of LionTree Advisors LLC ("LionTree") as Semler Scientific's financial advisor in any strategic transaction involving Semler Scientific.

22. On September 16, 2025, Semler Scientific and Party A entered into a confidentiality agreement with a standstill provision.

23. On September 17, 2025, Strive's financial advisor Cantor Fitzgerald contacted Defendant E. Semler regarding a potential transaction between Semler Scientific and Strive. In the week leading up to this contact, the Asset Entities Merger had closed and the trading price of Strive had declined significantly. For example, at market close before the closing of the Asset Entities Merger on September 11, 2025, Strive was trading at $8.91 per share and at market close on September 16, 2025 after the Asset Entities Merger had closed, Strive was trading at $4.48 per share.

24. Despite this volatility, or perhaps because of it, Semler Scientific and Strive worked quickly to negotiate and execute the Merger Agreement and announce the Proposed Transaction.

25. Early in the morning on September 22, 2025, Semler Scientific and Strive executed the Merger Agreement and announced the Proposed Transaction before trading markets open.

26. Semler Scientific's stock price did not fully reflect its growth prospects during the time leading up to the announcement of the Proposed Transaction and Strive's stock price at the

6

time the Proposed Transaction was announced exceeded its intrinsic value.

B.  **The Proposed Transaction and the Issuance of the Materially Incomplete and Misleading Proxy Statement**

27.  On or about September 22, 2025, Semler Scientific and Strive issued a joint press release to announce the Proposed Transaction, stating in part:

> **Strive, Inc. (Nasdaq: ASST) and Semler Scientific, Inc. (Nasdaq: SMLR) Announce Bitcoin Treasury Merger in All-Stock Transaction**
>
> September 22, 2025 08:15 ET
>
> DALLAS, TX and CAMPBELL, CA, Sept. 22, 2025 (GLOBE NEWSWIRE) -- Strive, Inc. ("Strive") entered into a definitive agreement to acquire Semler Scientific, Inc. ("Semler Scientific") in an all-stock transaction. In addition, Strive announced the purchase of 5,816 Bitcoin to its corporate treasury at an average price of $116,047 per Bitcoin, for a total purchase price of $675,000,000, inclusive of fees and expenses, bringing Strive's total Bitcoin holdings to 5,886.
>
> Transaction details:
>
> - Deal represents an approximately 210% premium, equivalent to approximately $90.52 per share, based on the trading price of Semler Scientific common stock and Strive Class A common stock as of the market close on September 19, 2025. Each common share of Semler Scientific will be exchanged for 21.05 Class A common shares of Strive.
>
> - The combined company announces post-merger intention to explore monetizing or distributing Semler Scientific's historically profitable diagnostics business at a future date, with a new management team and expanded mandate in preventative diagnostics.
>
> - The combined company would own over 10,900 Bitcoin prior to any additional Bitcoin raised from future financings, in addition to sufficient cash held in reserve to support future perpetual preferred offerings.
>
> - Strive management and Board of Directors will remain post-closing with Semler Scientific Executive Chairman Eric Semler expected to join the Board of Directors of the combined company.
>
> - We believe the combined company would become the fastest growing corporate Bitcoin holder, aiming to operate with a "preferred equity only" leverage model that avoids debt maturity risks associated with traditional leveraged Bitcoin strategies.

"We are proud to announce this exciting strategic merger combining two pioneering Bitcoin treasury companies to form a scaled, innovative and accretive Bitcoin acquisition platform," said Matt Cole, Chairman & CEO of Strive. "This merger cements Strive's position as a top Bitcoin treasury company, and we believe our alpha-seeking strategies and capital structure position us to outperform Bitcoin over the long run. This transaction showcases how we can grow Bitcoin holdings and Bitcoin per share at an unmatched pace in the industry to drive equity value accretion."

"We believe this merger creates significant value for our stockholders by delivering a substantial premium and direct participation in one of the most innovative Bitcoin strategies in the public markets," said Eric Semler, Executive Chairman of Semler Scientific. "Just as importantly, this merger can drive shareholder value by expanding our medical diagnostics business into a robust preventative care and wellness platform focused on early detection of chronic disease. This dual-pronged strategy fuels both financial strength and mission-driven growth opportunities for our stakeholders."

The transaction has been unanimously approved by the boards of directors of Strive and Semler Scientific. Closing of the transaction is subject to the satisfaction of customary closing conditions.

Davis Polk & Wardwell LLP is serving as legal counsel to Strive in connection with the transaction and Goodwin Procter LLP is serving as legal counsel to Semler Scientific in connection with the transaction.

Cantor Fitzgerald, L.P. is serving as financial advisor to Strive in connection with the transaction and LionTree Advisors LLC is serving as financial advisor to Semler Scientific in connection with the transaction.

28. During the weeks following the announcement of the Proposed Transaction, Strive's stock price fell significantly, from the $4.30 per share price at market close on September 19, 2025 prior to the announcement of the Proposed Transaction that was used to calculate the $90.52 per share value for Semler Scientific that the Proposed Transaction implied, to $1.99 per share at market close on October 9, 2025, the day before the Registration Statement was issued.

29. On or about October 10, 2025, in order to solicit approval to consummate the Proposed Transaction from Semler Scientific's public shareholders, the Board authorized the filing of the Registration Statement with the SEC.

30. The Registration Statement is materially incomplete and misleading.

C. **The Materially Incomplete and Misleading Registration Statement**

31. The Registration Statement is materially incomplete and misleading with respect to the financial impacts of the Proposed Transaction on the combined company and the financial fairness of the Proposed Transaction.

32. The Registration Statement includes unaudited pro forma condensed financial statements for the pro forma combined company (the "Unaudited Pro Forma Condensed Combined Statements of Financial Position"). *See* Registration Statement at 23-37.

33. According to the Unaudited Pro Forma Condensed Combined Statements of Financial Position, the pro forma combined company would have total stockholders' equity of approximately $1.692 billion as of June 30, 2025. *See* Registration Statement at 26.

34. The pro forma combined company's total stockholders' equity of $1.692 billion as of June 30, 2025 was calculated based on Strive's book value and Semler Scientific's equity value in the Proposed Transaction, with the Unaudited Pro Forma Condensed Combined Statements of Financial Position accounting for the difference between Semler Scientific's transaction value and Semler Scientific's historical equity balance or book value and certain non-recurring acquisition-related expenses as goodwill.

35. The sum of Strive's book value as of June 30, 2025 (approximately $852 million), Semler Scientific's equity value implied by the Proposed Transaction (approximately $838 million), and non-recurring acquisition-related expenses (approximately $11.7 million).

36. Because the pro forma combined company's total equity balance was calculated based on the implied transaction price for Semler Scientific, increasing the implied transaction price for Semler Scientific would increase the amount of goodwill created in the Proposed Transaction

9

and the total equity balance for the pro forma combined company. Likewise, decreasing the implied transaction price for Semler Scientific would decrease the amount of goodwill created in the Proposed Transaction and the total equity balance for the pro forma combined company.

37. As a result, the method by which the implied transaction price for Semler Scientific was calculated is material to the Unaudited Pro Forma Condensed Combined Statements of Financial Position and the Registration Statement in general. *See* 17 C.F.R. §§ 240.14a-101(b)(11); 229.10-01 through 229.11-03).

38. The Unaudited Pro Forma Condensed Combined Statements of Financial Position indicate that the pro forma combined company's goodwill and total equity balance information was prepared based on an assumption that Semler Scientific's equity value in the Proposed Transaction is approximately $838,102,300:

> c. The total pro forma adjustment to total Strive, Inc. and Subsidiaries stockholders' equity is summarized below:
>
> | | |
> |---|---|
> | Elimination of historical equity balance of Semler Scientific, Inc. | $(383,409,000) |
> | Estimated purchase price consideration | 838,102,300 |
> | Non-recurring acquisition-related expenses (refer to note (d) below) | (11,710,000) |
> | Pro forma adjustment to total Strive, Inc. and Subsidiaries stockholders' equity | $ 442,983,500 |

Registration Statement at 37.

39. The Unaudited Pro Forma Condensed Combined Statements of Financial Position also indicate that the $838,102,300 "estimated purchase price consideration" that is being paid to acquire Semler Scientific was calculated by multiplying the 335,241,000 shares of Strive Class A common stock to be issued to Semler Scientific stockholders in the Proposed Transaction by "Strive's Class A Common Stock price per share" of $2.50:

The historical consolidated financial statements of Strive, Asset Entities, and Semler were prepared in accordance with accounting policies generally accepted in the United States of America and shown in U.S. dollars.

For the purposes of these pro forma financial statements, the preliminary purchase price consideration is as follows:

| | |
|---|---:|
| Number of estimated Class A Common Stock of Strive to be issued to Semler Stockholders | 335,241,000 |
| Multiplied by Strive's Class A Common Stock price per share | $ 2.50 |
| **Estimated purchase price consideration** | **$838,102,500** |

Registration Statement at 31.

40. The Registration Statement further explains that the preliminary purchase price for Semler Scientific was "based upon management's estimates and assumptions related to the fair value of the consideration," calculated "as of the filing of the proxy statement/prospectus using currently available information," and "may differ significantly" from the "final purchase price allocation":

> *Note 2 – Preliminary purchase price allocation*
>
> For accounting purposes, Strive is considered to be the acquiring company and the Mergers are expected to be accounted for as a business combination. The Mergers are accounted for using the acquisition method of accounting in accordance with ASC Topic 805. Strive is the accounting acquirer as Strive will have assumed control over Semler as of the closing date. Topic 805 requires, among other things, that the assets acquired, and liabilities assumed be recognized at their acquisition date fair values, with any excess of the purchase price over the estimated fair values of the identifiable net assets acquired recorded as goodwill.
>
> The allocation of the preliminary purchase price for Semler is based upon management's estimates of and assumptions related to the fair value of the consideration transferred, assets acquired, and liabilities assumed as of the filing of the proxy statement/prospectus using currently available information. The unaudited pro forma condensed combined financial information has been prepared based on these preliminary estimates, such that the final purchase price allocation and the resulting effect on the Company's financial position and earnings results may differ significantly from the pro forma amounts included herein.

Registration Statement at 31-32.

41. The Registration Statement fails entirely to explain the basis for the $2.50 per share price for Strive's Class A Common Stock that was used to calculate the Semler Scientific

transaction price and, as a result, the pro forma combined company's goodwill and total equity balance.

42. As the $2.50 per share price was significantly lower than the $4.30 per share price prior to the announcement of the Proposed Transaction, significantly higher than the $1.99 per share price on October 9, 2025, the day before the Registration Statement was issued, and significantly higher than the $1.35 per share price at which Strive stock was issued on September 12, 2025 in the Strive PIPE Investment, the basis for this $2.50 per share assumption is unclear.

43. The basis for Strive management's $2.50 per share fair value assumption is plainly material to Semler Scientific's stockholders. Indeed, there is virtually no one who is in a better position to evaluate the fair value of Strive than Strive's own insiders.

44. Indeed, generally accepted accounting principles ("GAAP") typically provide that when a company is acquired in a stock merger, the transaction date fair value is based on the trading price of the acquiring company's stock. *See, e.g.,* Financial Accounting Standards Board ("FASB") Accounting Standards Codification ("ASC") 820-10-35-36B ("In all cases, if there is a quoted price in an active market (that is, a Level 1 input) for an asset or a liability, a reporting entity shall use that quoted price without adjustment when measuring fair value ….").

45. Upon information and belief, the "assumptions about the fair value of the consideration transferred" in the Proposed Transaction, *i.e.,* that the fair value of Strive common stock would be $2.50 per share, was based on the fact that, on September 15, 2025, the parties to the Strive PIPE Investment agreed to amend the Strive Subscription Agreement such that future stock may be issued "at the market" at $2.50 per share.

46. These reasons for these assumptions are obviously material to Semler Scientific's stockholders because any deviation from the $2.50 per share fair value assumption could greatly

impact the pro forma financial information and the equity stake that Semler Scientific's stockholders could expect to hold after closing. For example, if the pro forma financial information was based on the $1.35 per share price paid in the Strive PIPE Investment, the estimated purchase price consideration for the Proposed Transaction would be approximately $450 million, implying goodwill of just $70 million and a total equity balance for the pro forma combined company of approximately $1.3 billion. Assuming Semler Stockholders hold approximately 28% of the stock in the post-closing combined company,[1] that stake would be worth approximately $365 million, about $20 million *less* than Semler Scientific's historical equity balance of approximately $384 million. If the fair value assumption for Strive common stock was based on its trading price of $1.08 per share at market close on October 13, 2025, the transaction price of $362 million would imply negative goodwill (or what is sometimes referred to as a "bargain purchase gain") of approximately $20 million, a total equity balance for the pro forma combined company of approximately $1.34 billion, and a stake for Semler Scientific's stockholders of approximately $340 million, significantly lower than Semler Scientific's historical equity balance of approximately $384 million.

47. Whatever the basis for the decision to adjust the fair value of Strive common stock to $2.50 per share to ensure that the Proposed Transaction implies substantial goodwill, it should be clearly explained and defined so that the stockholders voting on the Proposed Transaction actually understand the information in the Unaudited Pro Forma Condensed Combined Statements of Financial Position. *See* 17 C.F.R. § 210.11-02(a)(10) and (11)(ii). The vague and ambiguous

---

[1] The Registration Statement indicates that there were approximately 866 million shares of Strive outstanding and underlying pre-funded warrants as of October 1, 2025, *see* Registration Statement at 84, and Semler Scientific's stockholders were expected to receive approximately 335 million shares in the Proposed Transaction.

statement that the final transaction price may differ from the assumptions that underlie the information that was presented in the Unaudited Pro Forma Condensed Combined Statements of Financial Position plainly does not suffice because Semler Scientific's stockholders will not have access to the financial information based on the final transaction price until after Strive has acquired Semler Scientific.

### COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9)**

48. Plaintiff incorporates each and every allegation set forth as if fully set forth herein.

49. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

50. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

51. The omission of information from a proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

52. Defendants have issued the Proxy with the intention of soliciting the Company's

common shareholders' support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the misleading Proxy, which attempts to minimize the number of shares voting against the Proposed Transaction.

53. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

54. The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

55. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligent,

recklessness, or intentional conduct.

56. The Company is also deemed negligent, reckless, or intentional as a result of the Individual Defendants' intent in preparing and reviewing the Proxy.

57. The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

58. Plaintiff incorporates each and every allegation set forth as if fully set forth herein.

59. The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

60. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

61. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

62. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

63. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

64. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

65. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

  A. Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or taking any steps to consummate the Proposed Transaction, until the Company issues curative disclosures that fully address the deficiencies in the Proxy Statement;

  B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

  C. Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

  D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

  E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 14, 2025

**OF COUNSEL**

**ADEMI & FRUCHTER LLP**
Guri Ademi
Jesse Fruchter
3620 East Layton Avenue
Cudahy, Wisconsin 53110
Tel. 414-482-8000
Fax 414-482-8001
gademi@ademilaw.com
jfruchter@ademilaw.com

*Attorneys for Plaintiff*

**ADEMI & FRUCHTER LLP**

By: */s/ John D. Blythin*
Shpetim Ademi (Wis. SBN 1026973)
John D. Blythin (Ill. SBN 6281648)
3620 East Layton Avenue
Cudahy, Wisconsin 53110
Tel. 414-482-8000
Fax 414-482-8001
sademi@ademilaw.com
jblythin@ademilaw.com

*Attorneys for Plaintiff*